**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

|  |  |  |
|---|---|---|
| **DEMETRIUS GATLING,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action No.** |
| **v.** | : | **5:10-CV-55 (CAR)** |
| | : | |
| **SHANE ROLAND, JESSIE MINCEY,** | : | |
| **and RICHARD MARSHALL BOAN,** | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Currently before the Court is Defendants' Motion for Summary Judgment [Doc. 40]. In this case, Plaintiff Demetrius Gatling ("Plaintiff") brings claims against three Middle Georgia College Police Officers – Defendants Shane Roland, Jessie Mincey, and Richard Marshall Boan – pursuant to 42 U.S.C. § 1983. Plaintiff contends that the three officers searched and arrested him without probable cause and sought to justify their search and arrest with false evidence. Through the present Motion, Defendants argue that probable cause did in fact exist for the search and arrest and that, even if it did not, they are entitled qualified immunity.

For the reasons discussed below, the Court finds that, with respect to the warrantless search and arrest, Plaintiff has identified sufficient evidence creating material fact issues as to whether probable cause existed or was reasonably inferred by Officers Mincey and Roland. Plaintiff, however, has not identified sufficient evidence to survive summary judgment on the remaining claims. Thus, while Plaintiff's claims against Officer Mincey and Roland for unlawful search and arrest may proceed, Plaintiff's remaining claims for failure to intervene, unlawful search against Chief Boan, and malicious prosecution fail as a matter of law. Defendants' Motion for Summary Judgment is accordingly **GRANTED** in part and **DENIED** in part.

## SUMMARY JUDGMENT STANDARD

Summary judgment must be granted if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996). However, not all factual disputes render summary judgment inappropriate. Only a genuine issue of material fact will defeat a properly supported motion for summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). This means that summary judgment may only be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict. See id. at 249-52.

In reviewing a motion for summary judgment, this Court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party. See id. at 254-55; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). The Court may not make credibility determinations or weigh the evidence. Id. The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law. Celotex, 477 U.S. at 323. If the moving party discharges this burden, then the burden shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact (i.e., evidence that would support a jury verdict) or that the moving party is not entitled to a judgment as a matter of law. Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991); see Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324-26. This evidence must consist of more than mere conclusory allegations or legal conclusions. See Avirgan, 932 F.2d at 1577. Summary judgment must be entered when "the

nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." Celotex, 477 U.S. at 323.

## FACTUAL HISTORY

The present civil rights case arises out of the search and arrest of Plaintiff Demetrius Gatling in February of 2008. At that time, Plaintiff was a student at Middle Georgia College (MGC) and was known by the campus police department. In fact, just two weeks prior to the incident in question, Plaintiff and his roommate, Robert Chatmon, were stopped by two MGC Police Department officers while they were walking on campus. The two officers, not parties to the present action, pulled their car along side the students and asked whether they had "any drugs, weed, alcohol, knives, guns or any type of illegal objects." The students responded that they did not. One of the officers then requested consent to search them. Although the students refused to give consent, the officers searched them anyway and found nothing. Thereafter, Plaintiff and Chatmon filed a written complaint with the MGC Police Department, and Plaintiff gave a full statement directly to Department Chief Richard Boan regarding the incident. Chief Boan is in charge of the relatively small police department and supervises the 12 or 13 officers employed to patrol the three MCG campuses.

On the evening of February 8, 2008, Plaintiff was again detained and searched by MGC police officers. Prior to these events, Plaintiff, Chatmon, and their three female friends – Whitney Lynch, Jameyka Davis, and Annierose Butts – were sitting his Chatmon's car, which was parked in the lot behind the students' residence hall. Chatmon sat in the driver's seat, Plaintiff was on the passenger side, and the girls sat in the back. While in the car, the students talked, listened to music, ate food from Wendy's restaurant, and shared a "wine flavored" Black & Mild cigar. No rule prohibited students from socializing in the car. It was properly registered with MGC and displayed the proper decal to be parked in that lot.

Nonetheless, MCG Police Officer Mincey and Sergeant Shane Roland were both dispatched to investigate a "suspicious person/vehicle" in the residence hall parking lot.[1] When he arrived on scene, Officer Mincey parked his cruiser immediately in front of Chatmon's car, thereby blocking him in the parking spot. As he approached the car, Officer Mincey saw Plaintiff, Chatmon, and Davis passing the cigar back and forth between them. Mincey leaned down near the driver-side window and asked Chatmon what was going on. Mincey noticed that, as he spoke to Chatmon, Plaintiff failed to look at him; he found this suspicious. As he stood near the car, Mincey could also smell a distinct odor and claims that he believed the smell to be from burning marijuana. Though he did not note it in his incident report, Officer Mincey also claims to have observed smoke rising from beside Plaintiff's leg, as if Plaintiff was trying to conceal a smoking marijuana joint or blunt. According to Plaintiff, this did not occur: Mincey did not see smoke rising from beside Plaintiff's leg while he questioned Chatmon. Of course, if ashes had fallen from the tip of the Black & Mild cigar as Plaintiff passed it to Chatmon, the ashes could have produced some smoke, but Plaintiff passed the cigar to Chatmon before Mincey approached his window. As such, Plaintiff denies Mincey ever saw smoke rising from beside his leg.

Officer Mincey then walked around the back of the car to confirm that it was registered to park in the lot. Plaintiff did not turn around to watch Officer Mincey walk behind the vehicle but watched him in the rearview mirror. He moved in doing this. Officer Mincey claims that from the rear passenger window, he saw Plaintiff put a brown item, which appeared to be rolled, in his mouth.[2] In Mincey's experience, a "blunt" for smoking marijuana can be made by hollowing out the tobacco insides of a cigar and replacing it with marijuana. Black & Mild cigars are made with a white filter tip,

---

[1] Defendants deny this allegation and claim that Officer Mincey merely came upon Plaintiff and his friends in routine patrol.

[2] On summary judgment, Defendants also contend that Officer Mincey's testimony is corroborated by one of the girl's testimony. Plaintiff disputes this fact and shows that the witness was less than certain when asked whether Plaintiff swallowed what he was smoking.

but can be smoked without the tip, and the students admit they had removed the white tip from the cigar. However, Plaintiff was not smoking marijuana, did not have a blunt, and did not put anything brown in his mouth. He was eating french fries that evening, and thus if Mincey did see Plaintiff put something in his mouth, it may have been a french fry.

Officer Mincey then walked to the passenger side of the car, opened the door, and ordered Plaintiff to exit the vehicle. Plaintiff complied and had nothing in his hands as he got out of the car. As he stepped out, however, Officer Mincey observed something burning or ashes on the floor board of the car on the passenger side. Officer Mincey then asked Plaintiff, "Where's the weed ?" to which Plaintiff responded, "I don't have any." Officer Mincey proceeded to pat down Plaintiff and search his pockets. Finding nothing, Officer Mincey ordered Plaintiff to open his mouth. Plaintiff complied, and Mincey put one finger in Plaintiff's mouth, touching Plaintiff's tongue and pushing down on his jaw. He then told Plaintiff, "If you bite my finger, I'll tase you. We're going to have some problems." Plaintiff did not bite Officer Mincey's finger. He did, however, begin to get upset and tried to ask Officer Mincey to remove his finger. Officer Mincey then stuck the end of his flight light in Plaintiff's mouth, forcing it to stay open.

At this point or shortly thereafter,[3] Officer Roland instructed Mincey to remove his flashlight from Plaintiff's mouth. Officer Mincey stated, "Here's the weed in his mouth right here. You see it?" Roland replied, "Yes, I see it." Officer Mincey claims to have seen a "green leafy substance" and brown cigar paper in Plaintiff's mouth. However, he later testified that he saw something green and "rolled-up" in Plaintiff's mouth, rather than a green leafy substance, and described it as looking like "dry marijuana, except it was just moist." Later, Mincey gave yet another description of the substance, saying that it was "spread out" rather than rolled-up and that he saw some wrapping paper in Plaintiff's

---

[3] There appears to be a dispute as to whether Officer Roland arrived at this point or whether he arrived at the same time as Officer Mincey.

mouth which was "moist" and "dark brown." Contrary to Officer Mincey's testimony, however, Plaintiff had nothing in his mouth, except possibly some french fry residue. Officer Mincey then placed Plaintiff under arrest.

Sargent Roland was then standing near Chatmon's car and claims to have smelled a distinctive odor emanating from the vehicle, which he allegedly believed to be smell of burning marijuana. Officer Roland searched Chatmon's car but found no evidence – no marijuana, no residue, no baggies, no scales, no wrapping papers – to corroborate the suspicion that Plaintiff had been smoking marijuana. Likewise, neither officer observed any physical manifestation consistent with marijuana. They never claimed that any of the occupants had blood shot or glassy eyes, appeared unsteady on their feet, or had slurred speech.

Once Plaintiff was secured in the back of a patrol car, Officer Mincey questioned the female witnesses. He claims one or more of the witnesses confirmed that Plaintiff was in fact smoking marijuana and that one of the girls further stated that Plaintiff had swallowed the marijuana. However, the girls were not asked to prepare a witness statement at that time, and they now state that they do not recall what was said to the officers that night. In written statements prepared the day after the incident, none of the girls stated that Plaintiff smoked or swallowed marijuana. On the night of the incident, Chatmon denied that Plaintiff or anyone else was smoking marijuana in the car. In fact, when Officer Mincey asked Chatmon, "Do you have any marijuana on you?" he responded, "No." Chatmon further told Mincey, "We wasn't smoking marijuana" and explained that they were "just smoking a Black & Mild." Chatmon did admit, however, that he had allowed a friend to use his car at a party off campus and that there may have been a scent in the car that he did not detect or recognize.

MCG Police Department Chief Richard Boan arrived at the scene after Plaintiff was arrested. The officers advised Boan of what they claimed to have seen and smelled. At this point, Sargent Roland had no further involvement in the matter. Officer Mincey took Plaintiff to the campus police

department, finger printed him, and issued two citations – for misdemeanor possession of marijuana and misdemeanor obstruction. Plaintiff was released the same night.

A few days later, on February 11, 2008, Chief Boan obtained a search warrant for the taking of bodily fluids from Plaintiff. However, the affidavit supporting the warrant failed to inform the Magistrate that no corroborating evidence was found or that the occupants of the vehicle all denied that Plaintiff was smoking marijuana. The affidavit also falsely stated that Plaintiff refused to obey Mincey's order to open his mouth, that Plaintiff only opened his mouth when he was threatened with a taser, and that Mincey and Roland saw something in Plaintiff's mouth that they could reasonably distinguish as marijuana.

Officers served Plaintiff with the warrant, and a blood sample was drawn on February 13, 2008. The drug test results were negative. After receiving the negative results of the blood tests from each and every occupant in the vehicle, Chief Boan dismissed the charges against Plaintiff.

## DISCUSSION

Plaintiff now brings this action, pursuant to 42 U.S.C. §1983, asserting that the named officers violated his Fourth and Fourteenth Amendment rights as guaranteed by the United States Constitution. In his Complaint, Plaintiff contends that the officers knowingly and intentionally searched, arrested, and prosecuted him without probable cause and based on fabricated evidence. He specifically claims that (1) Officers Mincey and Roland fabricated probable cause to support the warrantless search and arrest; (2) Defendant Roland failed to intervene in an effort to prevent Officer Mincey from violating Plaintiff's constitutional rights; (3) Chief Boan knowingly used false information to obtain a search warrant authorizing a blood test; and (4) all three officers maliciously prosecuted Plaintiff. Defendants have now moved for summary judgment. Defendants argue that there was probable cause for the searches and seizure and that, even if there was not sufficient probable cause, they are entitled to the protection of qualified immunity – as no reasonable state law enforcement officer would have been on

notice that their conduct violated Plaintiff's constitutional rights.

For the reasons discussed below, the Court finds that Defendants' Motion is due to be granted with respect Plaintiff's failure to intervene claim against Officer Roland, unlawful search claim against Chief Boan, and malicious prosecution claims against all three officers. However, because there are genuine issues of material fact regarding whether probable cause in fact existed or was reasonably inferred by the officers prior to the warrantless search and arrest, this case will be allow to proceed beyond the summary judgment stage, but only as to those claims against Officer Mincey and Roland.

I. <u>Unlawful Search & Arrest</u>

Plaintiff's first claim is that Officer Mincey and Sergeant Roland searched and arrested him based upon fabricated probable cause in violation of his Fourth Amendment rights. It is of course well-settled that both a full-scale search of a person and warrantless arrest violate the Constitution unless they are supported by probable cause. <u>Kingsland v. City of Miami</u>, 382 F.3d 1220, 1226 (11th Cir. 2004); <u>Terry v. Ohio</u>, 392 U.S. 1, 26 (1968); <u>Miller v. Harget</u>, 458 F.3d 1251, 1257 (11th Cir. 2006); <u>United States v. Espinosa-Garza</u>, 805 F.2d 1502, 1506 (11th Cir. 1986). Here, the encounter between Plaintiff and the three officers began with a simple police-citizen exchange and brief seizure, but it became a full-scale search and arrest when Mincey placed his finger and then his flashlight into Plaintiff's mouth, arrested him, and transported Plaintiff to the police station. <u>See Terry</u>, 392 U.S. at 26. Thus, Officer Mincey's actions violated Plaintiff's constitutional rights if they were not supported by probable cause. Probable cause exists only where "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." <u>Kingsland</u>, 382 F.3d at 1226 (internal quotation and cite omitted).

The facts of this case, when viewed in the light most favorable to Plaintiff, are sufficient to raise a jury question as to whether Officer Mincey had valid probable cause to execute the search and arrest.

On summary judgment, Defendants justify Officer Mincey's conduct by alleging that (1) he detected the smell of marijuana emanating from the car; (2) Plaintiff failed to make eye contact with Mincey upon questioning and refused to comply with Mincey's orders; (3) Mincey saw Plaintiff smoking and swallow something that looked like a blunt; (4) Mincey observed smoke rising from beside Plaintiff's leg and ashes on the floorboard of the car; (5) Mincey and Roland saw something that appeared to be green marijuana in Plaintiff's mouth; and (6) witnesses on the scene confirmed that Plaintiff had in fact been smoking marijuana and had swallowed it.   If Defendants' evidence was undisputed or unequivocally supported by evidence other than the officers' testimony, a finding of probable cause would indeed be warranted.  See id.

Plaintiff, however, identifies evidence on summary judgment that disputes, contradicts, or calls into question each of Defendants' proffered grounds for finding probable cause.  Plaintiff denies having smoked marijuana that evening and shows that he and his friends instead shared a Black & Mild cigar. According to Plaintiff's evidence, (1) the car did not smell like burning marijuana but like Black & Mild Cigar, (2) he complied with the officer's requests and his behavior was not suspicious, (3) he did not swallow a blunt or other brown object; (4) Officer Mincey never reported observing smoke rising from beside his leg until three years after the incident and in fact no smoke rose from beside his leg; (5) Plaintiff did not have anything in his mouth other than french fry residue when Mincey forced his mouth open and searched him; and (6) none of the written witness statements say that Plaintiff smoked or swallowed  marijuana on the night in question.  The evidence also shows that Plaintiff and Chatmon repeatedly told officers they were smoking a Black & Mild cigar, not marijuana. Chapman even provided an alternative explanation for any odor Mincey claimed to smell – stating that he had allowed a friend to use his car earlier and that there may be an odor in the car from that time.

In considering the totality of the circumstances, it also relevant that Officer Mincey never reported to have observed any physical manifestation consistent with marijuana use.  He never claimed

or reported that any of the occupants had blood shot or glassy eyes, appeared unsteady on their feet, or had slurred speech, and there is no evidence that Mincey conducted a field sobriety test to confirm that Plaintiff was under the influence of marijuana. A search of Plaintiff's pockets and the car likewise revealed no evidence of drug use – no marijuana, no residue, no baggies, no scales, no wrapping papers – to corroborate Officer Mincey's suspicion that Plaintiff had been smoking marijuana. In fact, blood drawn from Plaintiff tested negative for marijuana. On summary judgment Plaintiff even provides evidence for a motive to fabricate probable cause. Plaintiff testified that he and Chatmon had been stopped and unlawfully searched by campus police officers just two weeks before this incident and filed a formal complaint against those officers. While those officers were not involved in this incident, Plaintiff's evidence demonstrates that his complaint was made directly to Defendant Boan and that the police department is quite small, employing only 12 or 13 officers – evidence which may allow a jury to conclude that Defendants were aware of the prior incident and formal complaint.

Given the standard of review on summary judgment, the Court must view the facts in the light most favorable to Plaintiff. When viewed in this light, Plaintiff's evidence supports his allegations of fabrication, while Defendants lack any corroborating evidence to support their testimony. Plaintiff's evidence is thus sufficient to create a question of fact as to whether probable cause was fabricated in this case. Compare Kingsland, 382 F.3d at 1226-27 (finding fact issues regarding whether probable cause existed where there was no corroboration of officer's claim that motorist was at fault), with Cunningham v. Gates, 229 F.3d 1271, 1291-92 (9th Cir. 2000) (dismissing plaintiffs' conclusory allegations of fabrication where they produced "not an iota of evidence" to suggest that the officers fabricated evidence). The Court "cannot allow a probable cause determination to stand principally on the unsupported statements of interested officers, when those statements have been challenged and countered by objective evidence." Kingsland, 382 F.3d at 1228. Accordingly, whether the officers smelled, saw, and heard what they claim is a question for a jury.

This does not end this Court's analysis, however. On summary judgment, the officers raise the defense of qualified immunity, and if they are entitled to qualified immunity this case cannot proceed – even if a constitutional violation did occur. "[Q]ualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." Bashir v. Rockdale County, 445 F.3d 1323, 1327 (11th Cir. 2006) (citation omitted). The defense may be "claimed by an individual defendant who is being sued personally for actions that he or she took while acting under color of state law." Malone v. Chambers County Bd. of Com'rs, 875 F.Supp. 773, 789 (1994); Harlow v. Fitzgerald, 457 U.S. 800, 815, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

"The essence of [the] qualified immunity analysis is the public official's objective reasonableness, regardless of his underlying intent or motivation." Kingsland, 382 F.3d at 1231. Thus, if reasonable officers would differ on the lawfulness of the challenged search and arrest, Mincey and Roland are entitled to immunity. See id. (citing Storck v. City of Coral Springs, 354 F.3d 1307, 1314 (11th Cir. 2003)). On the other hand, if an officer "could be expected to know that certain conduct would violate [a suspect's] statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action." Id. (citing Harlow, 457 U.S. at 819). "Qualified immunity 'gives ample room for mistaken judgments' but does not protect 'the plainly incompetent or those who knowingly violate the law.'" Id. at 1231-1232 (quoting Malley v. Briggs, 475 U.S. 335, 343, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

The relevant question in this case, therefore, is whether Mincey and Roland were expected to know that their conduct violated Plaintiff's constitutional rights. As stated above, it is well settled that a full-scale search and arrest of a person without probable cause violates the suspect's constitutional right to be free from an unreasonable search. See Kingsland, 382 F.3d at 1232. Falsifying facts to establish probable cause is "patently unconstitutional" and was known to be unconstitutional long

before Plaintiff's arrest.  Id.  Thus, Mincey and Roland were on notice that a search and arrest based upon on manufactured or false probable cause is unconstitutional, and if the officers fabricated probable cause to support the warrantless search and arrest, they are not entitled to qualified immunity.

However, the undisputed evidence in this case may also support a finding that the officers were simply mistaken about whether probable cause existed.  Defendants concede as much.  Officers who have mistaken but reasonable probable cause for a search and arrest are still entitled to qualified immunity.  Kingsland, 382 F.3d at 1232; Post v. City of Fort Lauderdale, 7 F.3d 1552 (11th Cir. 1993).  "[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present," and " . . . in such cases those officials . . . should not be held personally liable."  Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).  Thus, the officers in this case may still be immune from suit if "reasonable officers in the same circumstances and possessing the same knowledge . . . *could have believed* that probable cause existed to arrest."  Skop v. City of Atlanta, Ga., 485 F.3d 1130, 1137 (11th Cir. 2007) (emphasis in original).  "This standard recognizes that law enforcement officers may make reasonable but mistaken judgments regarding probable cause . . . ."  Id.  The standard, however, "does not shield officers who unreasonably conclude that probable cause exists."  Id.

Whether an officer possesses arguable probable cause naturally depends on the elements of the alleged crime and the operative fact pattern.  Id. at 1137-38 (cite omitted).  Here, Plaintiff essentially concedes on summary judgment that the car smelled of smoke from the Black & Mild cigar and that the officers may have smelled an unusual odor in the car.  Chatmon's undisputed statements – that a friend took the car earlier and may have been responsible for any unusual smell – also opens the door for a finding that the officers may have in fact smelled an odor of marijuana in the car.  Plaintiff likewise concedes that the cigar may have looked like a blunt, that cigars are sometime filled with marijuana, and that Officer Mincey saw the students passing the cigar in the car as some do with

marijuana. Also, Plaintiff may have in fact been eating french fries when Mincey claims to have seen him put something in his mouth, and Plaintiff concedes he may have also had french fry residue in this mouth when Mincey and Roland claimed to have seen marijuana. Plaintiff further concedes that fallen cigar ashes could, theoretically, account for Mincey's claim that he observed smoke rising from beside his leg and ashes on the floor of the car.

Therefore, the undisputed evidence could support a finding that the officers mistakenly believed that they had probable cause to search and arrest Plaintiff. The next question, however, is whether the alleged mistake was "reasonable." Again, the officers would be entitled to qualified immunity only if "reasonable officers in the same circumstances and possessing the same knowledge as [Mincey and Roland] could have believed that probable cause existed . . . ." Skop, 485 F.3d at 1137 (emphasis removed). An objectively reasonable mistake "can properly contribute to determination of probable cause to arrest and can count just as much as a correct belief as long as the mistaken belief was reasonable in light of all the circumstances." U.S. v. Gonzalez, 969 F.2d 999, 1006 (11th Cir. 1992).

For example, in Post v. City of Fort Lauderdale, 7 F.3d 1552 (11th Cir.1993), an officer arrested a restaurant owner for allegedly violating the maximum occupancy code in his restaurant after he counted people in excess of the restaurant's maximum capacity (twenty-two). However, there were less than twenty-two people in the restaurant; so, there was actually no violation. The owner sued for false arrest, and the officer asserted a qualified immunity defense. The Eleventh Circuit Court of Appeals held that the officer's count was erroneous but reasonable because (1) the arresting officer knew the code team had found max cap violations on three earlier visits, (2) he himself had counted more than 22 people on prior occasions, (3) he had verified his results with another code team member, and (4) the count was made difficult by employees moving about and customers entering, exiting, and waiting for take-out food. Id. at 1557-58. Thus, the officer in Post simply made a good faith mistake and was entitled to qualified immunity. Id.

Unlike in <u>Post</u>, however, the totality of the circumstances in this case do not clearly support a finding that the officers made a good faith mistake. There is no evidence that the officers knew, at the time of the search and arrest, that Plaintiff had a history of marijuana use or had ever been arrested for marijuana possession before. Though Officer Mincey did allegedly confirm his suspicions with Roland, Plaintiff identifies evidence suggesting that neither officer could have reasonably believed that he had green leafy marijuana in his mouth. Moreover, as discussed above, no objective evidence supports the officers' conclusions. No evidence of marijuana use was found, no physical indicators of marijuana intoxication were observed, and there is no evidence that Officer Mincey conducted a field sobriety test or other investigation in an attempt to confirm his suspicions. Plaintiff and Chatmon also allegedly presented Officer Mincey with seemingly legitimate explanations for the things they observed prior to the arrest, and it appears that the officers chose to ignore other plausible explanations for what they saw and smelled. <u>See</u> <u>Kingsland</u>, 382 F.3d at 1226-27 (11th Cir. 2004) (finding fact issues regarding whether probable cause existed when officers ignored motorist's complaints and signs of injury in concluding that impairment from drugs caused her to fail field sobriety tests).

Certainly, a jury could find – based upon a perceived odor of marijuana, an observation of something in Plaintiff's mouth, and allegedly incriminating statements by witnesses – that the officers indeed had a reasonable but mistaken belief that probable cause existed. However, this conclusion is far from certain. It may be hard for a jury to reconcile the officer's testimony – that they saw "green marijuana" in Plaintiff's mouth – with subsequent evidence that Plaintiff did not have marijuana and thus could not have had anything resembling "green marijuana" in his mouth. Jurors may also find it difficult to understand why a suspect attempting to quickly conceal evidence would allegedly chew up a marijuana blunt rather than simply swallowing it. Accordingly, the issue of whether the officers are entitled to qualified immunity may in fact come down to witness credibility – something this Court cannot decide on summary judgment.

Viewing the evidence in the light most favorable to Plaintiff, the Court is unable to find that the officers' conduct was based upon an honest mistake. A jury must determine whether Officer Mincey searched and arrested Plaintiff under the mistaken belief that he had probable cause to do so and whether this mistake was objectively reasonable.[4] See Kingsland, 382 F.3d 1220. A jury will likewise have to decide whether Officer Roland actually smelled and saw marijuana, reasonably but mistakenly believed he smelled and saw marijuana, or simply assisted Officer Mincey in fabricating probable cause for the resulting arrest. Until these factual determinations are made, the Court cannot find that either officer is entitled to qualified immunity for his role in the warrantless search and arrest. Defendants' Motion for Summary Judgment must thus be denied as to this claim.

## II. Failure to Intervene

Plaintiff's Complaint also states a claim against Officer Roland for "failure to intervene." Plaintiff asserts that, upon arriving at the scene, Officer Roland should have "immediately realized that his overzealous subordinate was in over his head" and intervened to prevent Officer Mincey from further violating Plaintiff's constitutional rights.

The Eleventh Circuit has recognized that a law enforcement officer may be held directly liable under Section 1983 for failing to intervene when another officer is committing a constitutional violation. Ensley v. Soper, 142 F.2d 1402, 1407 (11th Cir. 1998). To be held liable, an officer must be in a "position to intervene," with the opportunity to observe the violation and to prevent it from

---

[4] On summary judgment, Officer Mincey *briefly* states that his search of Plaintiff's mouth may be validated by the exigent circumstances. See United States v. Young, 909 F.2d 442, 446 (11th Cir. 1990) ("The exigent circumstance doctrine provides that when probable cause has been established to believe that evidence will be removed or destroyed before a warrant can be obtained, a warrantless search and seizure can be justified."). However, this doctrine would not exculpate Officer Mincey from wrongdoing unless the fact finder determines that Mincey reasonably believed that evidence may be destroyed. If Mincey's suspicions were fabricated or unreasonable, the search may not be upheld as constitutional due to the "exigent circumstances." See id. ("Police officers relying on this exception must demonstrate an objectively reasonable basis for deciding that immediate action is required.").

happening. See Hadley v. Gutierrez, 526 F.3d 1324, 1331 (11th Cir.2008).

Here, the undisputed evidence reveals that Officer Roland was not in fact in a position to intervene. Sergeant Roland became involved in the incident only after Officer Mincey had already initiated the search of Plaintiff's mouth. Mincey had thus already allegedly violated Plaintiff's right against unreasonable search when Roland arrived. The evidence also supports the finding that Sergeant Roland reasonably believed Mincey had probable cause to search and arrest Plaintiff based on things that occurred prior to his involvement. Though it is alleged that Roland fabricated his claim of smelling and seeing marijuana to bolster Mincey's claims, it is undisputed that Mincey advised Roland, upon his arrival, that he had seen marijuana in Plaintiff's mouth and that Plaintiff had bitten him – obstructing his investigation. This information, if true, would provide probable cause for an arrest.

Valid failure to intervene claims usually involve egregious, clear-cut, allegations and opportunity to intervene. See e.g., Fundiller v. City of Cooper City, 777 F.2d 1436, 1441 (11th Cir. 1985) (officers refused to render medical attention to a man they knew had just been shot). The Court of Appeals also generally requires specific evidence of how an officer could have prevented the constitutional violation. Ensley v. Soper, 142 F.3d 1402, 1407-08 (11th Cir. 1998). Plaintiff has not produced such evidence here. Again, it is undisputed that Sergeant Roland became involved in the incident *after* the search and assisted Officer Mincey by searching the car and questioning witnesses *after* Officer Mincey had already arrested Plaintiff and placed him in his patrol car.

To the extent Sergeant Roland allegedly fabricated evidence in an effort to bolster Officer Mincey's claims, he may still be held accountable. As discussed above, "falsifying facts to establish probable cause is patently unconstitutional." Kingsland, 382 F.3d at 1232. Plaintiff, however, has not identified sufficient evidence demonstrating that Roland was in a position to intervene, with the opportunity to prevent Mincey from searching and arresting Plaintiff. For this reason, Defendants' Motion for Summary Judgment is due to be **GRANTED** as to the failure to intervene claim.

III.  Unlawfully Obtained Search Warrant

In his next claim, Plaintiff asserts that Chief Boan violated his Fourth Amendment rights by knowingly submitting false information in an application for the search warrant for Plaintiff's bodily fluids.  Our Constitution clearly "prohibits a police officer from *knowingly* making false statements in an . . . affidavit about . . . probable cause . . . if such false statements were necessary to the probable cause."  Jones v. Cannon, 174 F.3d 1271, 1285 (11th Cir. 1999) (emphasis added); see also Whiting v. Traylor, 85 F.3d 581, 585 n. 5 (11th Cir. 1996) ("Knowingly making false statements to obtain an arrest warrant can lead to a Fourth Amendment violation").  Thus, "[a] search warrant may be voided if the affidavit supporting the warrant contains deliberate falsity or reckless disregard for the truth" including "material omissions."  Dahl v. Holley, 312 F.3d 1228, 1235 (11th Cir.2002) (internal citations omitted).  A warrant is valid, however "if, absent the misstatements or omissions, there remains sufficient content to support a finding of probable cause."  Id. (citation omitted).

For the reasons discussed in the previous sections, Plaintiff has sufficiently raised a triable issue with respect to whether the facts included in the warrant affidavit were indeed false.  Therefore, the only remaining question is whether Plaintiff identified sufficient evidence suggesting that Chief Boan *knew* the facts alleged in the affidavit were false.  He has not.  It is undisputed that Chief Boan arrived at the scene just after Plaintiff was arrested and that the officers advised Boan of what they claimed to have seen and smelled.  Chief Boan was thus told that Officer Mincey and Sergeant Roland both smelled marijuana; that Officer Mincey saw Plaintiff swallow what he believed to be a blunt; and that both officers saw marijuana in Plaintiff's mouth.  Based on this and other information provided to him, Chief Boan prepared the affidavit and application for a search warrant:

> On 2-08-2008 Officer Mincey was on routine patrol in the Talmadge parking lot on the campus of Middle Georgia College in Cochran, Georgia 31014. Officer Mincey observed a green in color four door car with the windows down and the interior light on. The vehicle was occupied by five subjects, Robert Chatmon . . . , Demetrius Gatling . . . , Annierose Butts . . . , Whitney Lynch . . . , and Jameyka Davis . . . . Officer Mincey

approached the driver's side window of the car and asked if everything was ok. Officer Mincey smelled what he believed to be the odor of burning marijuana coming from the vehicle. Officer Mincey made his way to the passenger side of the vehicle and watched as the passenger put an item into his mouth. Officer Mincey made contact with the passenger, Mr. Demetrius Gatling, and asked him to open his mouth. Mr. Gatlin again refused to after being asked a second time to open his mouth. After Officer Mincey stated he would deploy his taser, Mr. Gatling opened his mouth and Officer Mincey placed his finger and the end of his mini flashlight into his mouth to prevent the destroying of evidence. Officer Mincey observed a green leafy substance in Mr. Gatling's mouth. Sgt. Roland arrived and also saw the green leafy substance. Mr. Gatling was then able to swallow the green leafy substance before any could be recovered.

Plaintiff does not dispute that Chief Boan was told these things by the investigating officers.

Observations of fellow officers are certainly a reliable basis for a warrant as long as the affiant states that he is relying on other officers in the affidavit. See United States v. Kirk, 781 F.2d 1498, 1505 (11th Cir. 1986); see also United States v. Reed, 700 F.2d 638, 641-42 (11th Cir. 1983) ("It has long been held that statements by law enforcement officials based . . . upon the observation of fellow officials participating in the same investigation are entitled to a presumption of reliability."); Sosa v. Hames, 581 F. Supp.2d 1254, 1270 (S.D. Fla. 2008) (finding that officer "was entitled rely upon statements made to him by another officer in drafting the [a]ffidavit, even if it is ultimately discovered that [the other officer] misstated the evidence."). Plaintiff does not allege that Chief Boan claimed to have personal knowledge of these events in his affidavit or that he otherwise failed to inform the Magistrate he was relying upon reports of other law enforcement officers. Indeed, it is clear that the information detailed in the affidavit was derived from the other officers' observations. The statements were thus "truthful" to the extent that Chief Boan "believed or appropriately accepted" them as true. Id.; Franks v. Delaware, 438 U.S. 154, 165, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978) (facts in warrant application are required to be "'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true.").

On summary judgment, Plaintiff argues that the affidavit falsely stated that Plaintiff refused to

obey Mincey's order to open his mouth; that Plaintiff only opened his mouth when he was threatened with a taser that Mincey did not possess; and that Mincey and Roland saw something in Gatling's mouth that they could reasonably distinguish as marijuana. Even so, Plaintiff has produced no evidence that Chief Boan in fact *knew* that such statements were false or should not have been "believed or appropriately accepted by" Defendant Boan as true. The fact that there was no corroborating evidence found during the search of the car would not support a finding that Chief Boan's affidavit was untruthful. The officers informed Boan that they saw corroborating evidence in Plaintiff's mouth, and both officers informed Boan that they smelled marijuana. Chief Boan was permitted to rely on the statements of his officers despite the lack of other corroborating evidence. Chief Boan was likewise not required to give more weight to exculpatory statements by Plaintiff's friends than to the statements made by his own officers. Plaintiff has thus failed raise a triable issue as to whether Chief Boan knowingly or recklessly made false statements in the warrant application.

The Court is likewise unpersuaded that the omissions Plaintiff identifies were sufficient to invalidate the search. Plaintiff argues that Chief Boan improperly omitted the fact that there was no corroborating evidence located during a search of the vehicle and that the occupants of the vehicle all denied that anyone in the vehicle was smoking marijuana. Certainly, a search warrant may be voided if there were material omissions in the supporting affidavit. Dahl v. Holley, 312 F.3d 1228, 1235 (11th Cir. 2002) (citing United States v. Martin, 615 F.2d 318, 328-29 (5th Cir. 1980)). However, a warrant may still be valid if, absent the omissions, there remains sufficient content to support a finding of probable cause. Dahl, 312 F.3d at 1235 (citing Franks, 438 U.S. at 171-72). Thus, the omission of an exculpatory statement by a witness does not invalidate the warrant where the omitted facts would not have prevented a finding of probable cause. Id. at 1235-36; see also Moran v. Cameron, 362 Fed. Appx. 88, 98 (11th Cir. 2010).

Here, even if the affidavit had informed the Magistrate that there was no corroborating evidence

and that the occupants of the vehicle all denied that Plaintiff was smoking marijuana, the Magistrate could have still found probable cause based solely on the officer's alleged observations. See United States v. Odgen, 572 F.2d 501, 502 (5th Cir. 1978) ("identification of the odor of marijuana is enough to support probable cause to search."). In other words, the omissions Plaintiff identifies are immaterial because there were other facts that, if true, would have been sufficient to support a finding of arguable probable cause. The affidavit stated that two officers on the scene smelled marijuana, saw it in Plaintiff's mouth, and believed that Plaintiff had ingested the evidence. If accepted as true, these facts could form a basis for arguable probable cause. The exculpatory statements by Plaintiff's friends and the lack of additional corroborating evidence would not have prevented a finding of probable cause.

Summary judgment is accordingly due to be granted in favor of Defendant Boan with respect to this claim.

IV. Malicious Prosecution

Plaintiff's final claim is for malicious prosecution. To establish a malicious prosecution claim under § 1983, a plaintiff must prove both the elements of the common law tort of malicious prosecution *and* a violation of his right to be free from unreasonable seizures arising from that prosecution. Kingsland, 382 F.3d at 1234 (explaining that plaintiff in § 1983 malicious prosecution claim "bears the burden of proving that she was seized in relation to the prosecution, in violation of her constitutional rights"); Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003); Whiting v. Taylor, 85 F.3d 581, 584 & n. 4 (11th Cir.1996). Under both federal and Georgia law, the common law tort of malicious prosecution is proven if the plaintiff shows "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." Kjellsen v. Mills, 517 F.3d 1232, 1237 (11th Cir. 2008). Neither party disputes whether the first, third, or fourth elements are met on summary judgment. Rather, the parties simply again argue whether Plaintiff has identified sufficient

evidence that the criminal prosecution was instituted or continued by Defendants "with malice and without probable cause." See id. This factual dispute is irrelevant, however, unless Plaintiff shows that there was an actual violation of his right to be free from unreasonable seizures arising, not from his arrest, but from that prosecution. Kingsland, 382 F.3d at 1234. Inasmuch, Plaintiff must show that he suffered a deprivation of liberty after "legal process" was initiated. Id. Here, Plaintiff cannot, as a matter of law, prove the requisite Fourth Amendment violation.

First, the deprivation of liberty necessary for malicious prosecution claim "must have been effected 'pursuant to legal process.'" Love v. Oliver, 450 F.Supp.2d 1336, 1340 (N.D. Ga. 2006) (quoting Singer v. Fulton County Sheriff, 63 F.3d 110, 116-17 (2d Cir. 1995)). "Ordinarily this 'legal process' will be either in the form of a warrant, in which case the arrest itself may constitute the seizure, or a subsequent arraignment, in which case any post-arraignment deprivations of liberty (such as being bound-over for trial) might satisfy this constitutional requirement." Id. In the case of a warrantless arrest, "the judicial proceeding does not begin until the party is arraigned or indicted. Thus, [a] plaintiff's arrest cannot serve as the predicate deprivation of liberty [if] it occurred prior to the time of arraignment and was not one that arose from malicious prosecution as opposed to false arrest."[5] Id. at 1340-41; Kingsland, 382 F.3d at 1235 ("[P]laintiff's arrest cannot serve as the predicate deprivation of liberty because it occurred prior to the time of arraignment . . . ."); see also Mejia v. City of New York, 119 F.Supp.2d 232, 254 (E.D.N.Y. 2000) ("[T]he existence, or lack, of probable cause is measured as of the time the judicial proceeding is commenced . . . not the time of the preceding warrantless arrest.").

In this case, the undisputed evidence shows that Plaintiff was arrested, issued two misdemeanor

---

[5] Georgia law defines prosecution in the context of a claim for malicious prosecution as follows: "an inquiry before a committing court or a magistrate shall amount to a prosecution." O.C.G.A. §51-7-42.

citations for possession and obstruction, and released the same night. There was, therefore, no initiation of "legal process" or deprivation of Plaintiff's liberty post-arrest. Again, Plaintiff's arrest "cannot serve as the predicate deprivation of liberty" because it occurred prior to initiation of judicial proceedings, and normal conditions of pretrial release simply do not constitute a "seizure" necessary for a claim of malicious prosecution. See Kingsland, 382 F.3d at 1235; Burdeshaw v. Snell, 365 F.Supp.2d 1194, 1202 (M.D. Ala. 2005) ("[T]he original arrest cannot form the basis for a federal malicious prosecution claim."). Accordingly, because Plaintiff was released immediately after the citations were issued and was not subject to any subsequent seizure or loss of liberty, he cannot prevail on a malicious prosecution as a matter of law. See Kingsland, 382 F.3d at 1235; Singleton v. Martin, 2008 WL 80263 *5 (S.D. Ga. Jan. 7, 2008) (noting that plaintiff could not state a claim for malicious prosecution because he "was never 'seized' after he was formally charged.").

The Courts notes, however, that Plaintiff may contend that the subsequent "search" pursuant to the warrant for his bodily fluids was a seizure in relation to his prosecution. The Court has found no law to support this argument, but even if valid, Plaintiff's malicious prosecution claim would be limited to the facts and circumstances culminating in and including that seizure (i.e., Chief Boan's conduct in obtaining the warrant) and could not relate back to Mincey and Roland's conduct before his arrest. See Garrett v. Stanton, 2009 WL 4258135 * 7 (S.D. Ala. Nov. 19, 2009) (confining plaintiff's malicious prosecution claim to the facts and circumstances culminating in and including his surrender to the custody of law enforcement authorities). For the reasons discussed above, the Court finds that Plaintiff failed to raise genuine issues of material fact as to whether Chief Boan acted without probable cause or with malice when he applied for the warrant for Plaintiff's bodily fluids. It is also undisputed that there was no further "prosecution" following the subsequent "search" or blood test. Chief Boan dropped all charges against Plaintiff after the drug test returned negative. Thus, even if Plaintiff could rely on the search for bodily fluids as the requisite deprivation of liberty, his claim fails.

Because Plaintiff has not shown that the requisite "legal process" was initiated in this case and cannot prove a violation of his Fourth Amendment right to be free from unreasonable seizures necessary to support a malicious prosecution claim under §1983, Defendants are entitled to summary judgment on the merits of this claim.  See Kingsland, 382 F.3d at 1234-35.

## CONCLUSION

For the reasons discussed above, Plaintiff's claims against Officer Mincey and Sergeant Roland for violations of his Fourth Amendment rights may proceed to trial.  However, Plaintiff's claim against Sergeant Roland for failure to intervene, claim against Chief Boan for unlawful search, and claims of malicious prosecution fail as a matter of law.  Defendants' Motion for Summary Judgment is therefore **GRANTED** in part and **DENIED** in part.

SO ORDERED this 13th day of July, 2011.

S/ C. Ashley Royal
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT

jlr